STERN ET AL., APPELLANTS, *v.* TAFT ET AL., APPELLEES.

(No. C-75498—Decided September 20, 1976.)

*Messrs. Bloom & Greene,* for appellants.
*Messrs. Goldman, Cole & Putnick,* for appellees.

KEEFE, J. This cause came on to be heard upon the appeal, the transcript of the docket, journal entries and original papers from the Hamilton County Court of Common Pleas, and the assignments of error, briefs and oral arguments of counsel.

The operative facts are uncomplicated and undisputed. In January 1972, the defendants, appellees herein, as lessees, entered into a lease agreement with the plaintiffs, the appellants and lessors. The term of the lease was two years with an option to renew for one year at an increased rent. The lease also provided that the defendants would not "underlet said premises, nor any part thereof, without the written consent of said lessors, *which shall not be un-*

*reasonably withheld * * *.*" (Emphasis added.) With the end of the initial two years near-at-hand, defendants informed plaintiffs of their decision to exercise the option, but subsequently informed plaintiffs that they were vacating the premises and desired to sublease to a Mrs. Hermann. Plaintiffs withheld consent to this arrangement on the sole ground that the prospect, Mrs. Hermann, was a widow. Thereafter, the premises were vacated by defendants and plaintiffs brought this action to recover lost rents during that period when the premises were unoccupied.

Defendants prevailed on a motion for summary judgment, rendered pursuant to Civil Rule 56. The appellants now urge three assignments of error.

We believe the orderly disposition of this appeal invites consideration of the second and third assignments of error at the outset, and an examination and resolution of the first assignment thereafter. The second and third assignments raise the true issue to be determined and can be disposed of concurrently, although the third assignment suffers from the same infirmity of abstraction contained in assignment one, which we discuss hereinafter. The second and third read:

"Since reasonable minds could draw differing inferences from the uncontested facts, the trial court committed error in deciding the issue of the reasonableness of the plaintiffs refusal of a prospective tenant."

"The refusal of a prospective substitute tenant on the sole basis that she is a widow is not unreasonable as a matter of law."

The issue, simply stated, is whether the court below erred in deciding, *as a matter of law*, that it was unreasonable for the plaintiffs to withhold their consent to the subleasing solely because Mrs. Hermann was a widow. Or, in other words, could reasonable minds reach any conclusion, under the uncontested facts, other than that plaintiff's refusal to consent to Mrs. Hermann, because she was a widow, was unreasonable.

By the provisions of Civil Rule 56, the party against whom the motion is made is "entitled to have the evidence or stipulation construed most strongly in his favor." In

the instant case, one of the plaintiffs, Mr. Stern, explained in his deposition why Mrs. Hermann was unacceptable to him. The deposition states:

"A. I said, there's one thing, Al. I hate to say it on account of Mrs. Hermann especially. I will not rent to a single lady or widow on account of I had a bad experience right now. I had Mrs. Hope Beck in my apartment, never a complaint, never trouble. Mrs. Beck got married and I had nothing else than trouble with her husband.

"This is the only reason. And I tell you again the only reason why I wouldn't take no single lady in the apartment.

"Q. Was Mrs. Hermann a widow?

"A. Yeah * * *.

"Q. Besides the fact that she was a widow, otherwise she was a suitable tenant for you?

"A. No, she would not—I mean, as a person, she was, but not a suitable tenant for the apartment, no.

"Q. Other than the fact that she was a widow, other than that fact—

"A. Right. And was single."

Even assuming that appellants had a "bad experience" with Mrs. Hope Beck Taft (an appellee), and her husband, the decision *not to rent to any other single or widowed women* in the future can only be characterized as illogical, arbitrary and unreasonable.

Mrs. Hermann admittedly was an otherwise suitable tenant and we can conceive of no facts or evidence which could be developed at a trial to convert the arbitrary exclusion of Mrs. Hermann into a reasonable one. The state of the evidence presented upon the motion demonstrates no material fact and *reasonable* minds could only conclude that appellants' refusal to approve the sublease to Mrs. Hermann, a widow, was unreasonable and in violation of the terms of the lease.[1]

----

[1]See Annotation 54 A. L. R. 3d 679, "Lessor's Consent to Subletting," at page 682: "A * * * major problem with consent provisions involves the determination of whether a landlord's refusal to give consent is arbitrary or unreasonable. In making such a determination, it seems

The second and third assignments of error lack merit and are overruled.

The remaining assignment (the first) actually fails to assert the manner in which the trial court is alleged to have erred, as required by the Rules of the First District Court of Appeals. Rather, the assignment simply propounds an abstract proposition of law. It reads:

"A landlord does not have an affirmative duty to minimize or mitigate damages or losses when a tenant vacates before the end of a lease term."

We elect to rephrase this nominal assignment so that it amounts to a true assignment, thus: the judgment below is contrary to law because the trial court in effect determined that a lessor has a duty to mitigate damages when his lessee vacates before the end of a lease term. The arguments of the plaintiffs in support of their proposition notwithstanding, we believe that a landlord-lessor does owe to his lessee such a duty. In expressing this point of view, we are not unaware of the existing disagreement among the various jurisdictions as to whether a landlord has a duty to accept or procure a new tenant for the purpose of mitigating the damages recoverable from a tenant who, prior to the expiration of his term, has abandoned or failed to occupy premises under a lease or tenancy.[2] Moreover, the relevance of the common-law principle of mitigation is

clear that the general standard to be applied is the traditional objective standard of the reasonably prudent man. While the ultimate determination of whether a particular refusal is unreasonaable or arbitrary depends on the facts of each case, the courts appear to have recognized that a key factor in determining whether a landlord's refusal is unreasonable is whether the landlord may be assured that the convenants of the lease, particularly the convenant to pay rent, will be met."

[2]See Annotation 21 A. L. R. 3d 534, "Damages—Mitigation by Landlord," at 541: "[I]t may be noted that several factors indicate a leaning toward the view that a landlord should be required to mitigate damages. * * * Moreover, the courts have recently indicated some awareness of the fact that legal commentators have critized the rule which allows a landlord to stand idly by while damages accumulate in his favor."

There appears to be disagreement on the question in Ohio cases. See 33A Ohio Jurisprudence 2d 273, Landlord and Tenant, Section 367.

questionable inasmuch as the rights and duties of the parties here arise under the lease, which provides that the lessors' consent to subleasing shall not be unreasonably withheld. Furthermore, in view of our resolution of the second and third assignments deciding that the landlords unreasonably withheld their consent to the sublease in violation of an enforceable promise made by them, invoking the principle of mitigation of damages seems additionally inappropriate. In other words, an application of the rule of mitigation of damages contemplates some legal entitlement to damages, but here the landlords enjoyed no such rights. The first assignment of error is overruled, and we affirm the judgment below.

*Judgment affirmed.*

SHANNON, P. J., and PALMER, J., concur.