JEFFERSON DEVELOPMENT COMPANY v HERITAGE
CLEANERS

Docket No. 49471. Submitted June 3, 1981, at Detroit.—Decided
September 21, 1981.

Plaintiff, Jefferson Development Company, owns and operates a
shopping center. Plaintiff executed a lease with defendant,
Heritage Cleaners, as lessee for space in the shopping center.
The lease provided for monthly rental payments and was to
run for five years. After 11 months Heritage vacated the
premises and made no further rental payments. Defendant
placed a sign in the vacant store advertising it for rent.
Plaintiff removed the sign and claimed to have replaced it with
its own, but there was testimony that no sign was in place.
Plaintiff advertised and after several months rented the space
to a new tenant at a monthly rental that was higher than that
charged to the defendant. Tenancy has since changed again.
Plaintiff brought an action in district court against defendant
for damages for breach of the lease. The district court found
that plaintiff's actions in increasing the rent and excluding
defendant from participation in the process of reletting the
premises was an election of remedies such as to rescind the
lease and that defendant was not liable for damages. Plaintiff
appealed to the Macomb Circuit Court, which affirmed, Ken-
neth N. Sanborn, J., holding that plaintiff's refusal to rent to
anyone for other than a higher rental than that paid by
defendant constituted a lack of diligence in mitigating dam-
ages. Plaintiff appeals by leave granted. *Held:*

1. Plaintiff clearly did not accept defendant's abandonment of
the premises and did not release defendant from further liabil-

REFERENCES FOR POINTS IN HEADNOTES

[1] 49 Am Jur 2d, Landlord and Tenant § 1100.

[2-4] 49 Am Jur 2d, Landlord and Tenant §§ 621-625.
Landlord's duty, or tenant's failure to occupy, or abandonment of,
premises, to mitigate damages by accepting or procuring another
tenant. 21 ALR3d 534.

[3] 49 Am Jur 2d, Landlord and Tenant § 1108.

[4] 22 Am Jur 2d, Damages §§ 204, 205.

ity. The district court's rationale for denying relief was erroneous.

2. A landlord has a duty to use reasonable efforts to mitigate his damages caused when a tenant wrongfully abandons a premises. Both courts below believed that the plaintiff had acted unreasonably in its efforts to mitigate damages. However, neither the removal of the defendant's sign nor the reletting at only an increased rental rate is dispositive of the issue of reasonableness.

3. The increase in rental must be evaluated in light of other factors such as the amount of the increase, market rents of similar properties, and the plaintiff's reasons for seeking increased rents.

4. If, on retrial, the plaintiff's attempts at mitigation are found to have been reasonable, the defendant is entitled to a reduction in its liability in the amount of benefits the plaintiff has realized because of the breach.

Reversed and remanded.

1. LANDLORD AND TENANT — ABANDONMENT OF PREMISES.

A landlord has two options upon abandonment of a leased premises by a tenant: (1) he may release the lessee from further liability, an option which requires the mutual agreement of the parties, or (2) he may continue to hold the tenant liable on the lease.

2. LANDLORD AND TENANT — ABANDONMENT OF PREMISES — MITIGATION OF DAMAGES.

A landlord has a duty to use reasonable efforts to mitigate his damages where a tenant wrongfully abandons the premises; the burden is on the tenant to establish that the landlord failed to act reasonably to mitigate damages.

3. LANDLORD AND TENANT — ABANDONMENT OF PREMISES — MITIGATION OF DAMAGES — UNREASONABLENESS.

An increase in the rental rate charged by a landlord to a new lessee for premises abandoned by the original lessee in breach of a rental agreement may be considered as evidence of unreasonableness in mitigation of damages, however, such evidence must be considered in light of other factors such as the amount of the increase, market rents of similarly situated properties, and the reasons given by the landlord for seeking increased rents.

4. DAMAGES — BREACH OF AGREEMENT — BENEFITS REALIZED.

A defendant who is found to be liable for damages because of a

breach of a rental agreement is entitled to a reduction in the amount of its liability in the amount of any benefits the plaintiff was able to realize as a consequence of the breach.

*Levin, Levin, Garvett & Dill* (by *Richard M. Selik*), for plaintiff.

*Lawrence J. Nahas, P.C.* (by *Richard J. Barr*), for defendant.

Before: BRONSON, P.J., and R. M. MAHER and F. X. O'BRIEN,* JJ.

BRONSON, P.J. Plaintiff appeals by leave granted an order of the Macomb County Circuit Court affirming the decision of the 37th Judicial District Court denying plaintiff any damages for defendant's breach of a leasing agreement between the parties.

Plaintiff owns and operates Lakeshore Village Shopping Center in St. Clair Shores. On September 1, 1976, plaintiff executed a lease with Heritage Cleaners (hereinafter defendant) as lessee for space in the shopping center. The lease provided for rent in the amount of $450 per month and was to run for a period of five years.

Defendant voluntarily vacated the premises in July, 1977, and made no further rental payments. At this time, defendant informed plaintiff that it could no longer afford to lease the store. Plaintiff retained the security deposit it held, equal to one month's rent, for the rent due in August, 1977.

Shortly after the premises were abandoned, defendant placed a sign in the window of the vacant store advertising it for rent. Plaintiff removed the sign and claimed to have replaced it with its own. Several witnesses called during trial by defendant

---

* Circuit judge, sitting on the Court of Appeals by assignment.

testified, however, that when they went by the vacated premises on various occasions during the fall of 1977, they observed no sign. Pictures of the premises allegedly taken on October 27, 1977, revealed no sign in the window.

Plaintiff placed advertisements in The Detroit News from late July, 1977, through March, 1978, advertising "stores to lease". Despite the wording of the advertisement, Sanford Lane, a co-owner of Jefferson, testified that the ads were only for the store vacated by defendant and claimed advertising costs of $423.

Sanford Lane also testified that several persons contacted Jefferson about the premises. Several prospective tenants had to be rejected because of the nature of their businesses. Many of the rental agreements plaintiff possessed contained clauses forbidding the leasing of space to those engaged in businesses in which current tenants competed.

The premises remained vacant until March 9, 1978, at which time a new lease was executed with Detroit Translation Bureau, Inc., a current tenant in the shopping center, for a three-year period commencing April 15, 1978. This lease provided for a monthly rental rate of $500. Detroit Translation Bureau vacated the premises in May, 1978, and its security deposit was used for the June rent. Mr. Lane testified that Detroit Translation would not be sued because it was renting other space in the shopping center.

A lease with Henrietta's Dress Shop commenced on August 15, 1978. This lease also provided for a $500 monthly rental rate and has a five-year term.

Both Mr. Lane and another co-owner, Marvin Brooks, admitted that they never attempted to lease the premises for less than $500 a month. Lane further indicated that plaintiff did not intend

to credit the additional $50 per month received from the new tenants toward the amount of rents owed by defendant.

Following a bench trial in the district court, the judge concluded that plaintiff's actions in increasing the monthly rental rate and excluding defendant from participating in the process of reletting the premises constituted an "election of remedies" such that the old contract was rescinded. Consequently, the trial court concluded that defendant was not liable for damages. The trial court also stated in passing that plaintiff's actions in mitigation were unreasonable.

On appeal to the circuit court, the district court was affirmed. The circuit court's decision was based on its conclusion that plaintiff's conduct in refusing to rent to anybody but a tenant who would pay a higher rental than defendant "decidedly constitutes a lack of diligence in mitigating damages".

A landlord has two available options upon abandonment of a leased premises by a tenant. He may release the lessee from further liability under the rental agreement. However, a release requires the mutual agreement of the parties, and a tenant's decision to vacate or abandon the premises does not in and of itself exonerate the tenant. *Pyle v Orzell,* 350 Mich 298, 303; 86 NW2d 163 (1957), and cases cited therein. Alternatively, a landlord may continue to hold the tenant liable on the lease, in which case the lessee's liability for rent remains. *Huntington v Parkhurst,* 87 Mich 38; 49 NW 597 (1891).

In the instant case, it is clear that plaintiff did not accept defendant's abandonment of the premises and release it from further liability. Instead, plaintiff at all times indicated its intent to hold

defendant liable on the lease. Sections 29 and 40(a)(2) of the lease were specifically indicative of plaintiff's policy of holding breaching tenants liable on their contracts. Consequently, the district court's rationale for denying plaintiff relief was legally erroneous.

Nonetheless, where a tenant wrongfully abandons the premises, the landlord has a duty to use reasonable efforts to mitigate his damages caused by the breach. *Froling v Bischoff,* 73 Mich App 496, 499-500; 252 NW2d 832 (1977), *Klager v Robert Meyer Co,* 95 Mich App 319, 325; 290 NW2d 132 (1980). The burden is on the tenant to establish that the landlord failed to act reasonably to mitigate damages. *Froling, supra.*

The opinions of the two lower courts reveal that both believed plaintiff had been unreasonable in its efforts to mitigate damages. The trial court emphasized that the landlord had removed the sign defendant had placed in the storefront as showing unreasonableness. The circuit court, sitting in review, was primarily concerned that plaintiff only sought to relet the premises at an increased monthly rental rate. We conclude that neither action by plaintiff, although each is relevant, is dispositive of the issue of the reasonableness of the mitigation efforts.

Considering first the fact that plaintiff removed defendant's "for rent" sign, we note that the testimony concerning plaintiff's subsequent actions in respect to posting a rental sign on the vacated premises is conflicting. Under the lease, defendant had no right to relet the premises. Consequently, the mere removal of the sign does not adversely reflect on plaintiff's efforts to mitigate. However, if the factfinder believed the defense witnesses' testimony that plaintiff never posted its own "for rent"

sign on the premises and that the failure to post this sign was unreasonable, it could conclude that plaintiff had not made proper attempts to mitigate its damages.

We find few cases dealing with the problem of a landlord's right to obtain damages where the rent has been increased following the breach. In *Benton v Jacobs,* 3 La App 274 (1923), the court held that the landlord's decision to increase rents after the breach relieved the tenant of the obligation on the lease. Plaintiff notes that the Louisiana court also held in *Benton* that a landlord is not normally bound to secure a new tenant where a breach has occurred. While the *Benton* court specifically found a duty to mitigate based solely upon a written agreement between the tenant and landlord, this distinction is unimportant to this case since, in Michigan, a lessor is obligated to mitigate damages. In *In re Garment Center Capitol, Inc,* 93 F2d 667; 115 ALR 202 (CA 2, 1938), the circuit court ruled that a request for higher rentals following the tenant's breach did not constitute a failure to exercise due diligence in reletting the property where it was well known that the asking price was merely a starting point for negotiations. However, in *Mar-Son, Inc v Terwaho Enterprises, Inc,* 259 NW2d 289 (ND, 1977), the court ruled that the landlord did not act in good faith by asking for an annual rent of $33,600 where the breached lease provided for minimum annual rents of $21,000. No jurisdiction seems to have adopted a per se rule that seeking higher rentals constitutes improper mitigation of damages.

We believe that an increase in the rental rate can be considered as evidence of unreasonableness in mitigation. However, such factors as the amount of the increase, market rents of similarly

situated properties, and the reasons given by the landlord for seeking increased rents must also be evaluated by the court before reaching a decision on the issue of reasonableness. Here, the circuit court's opinion suggests that it believed the fact of an increase was dispositive. Due to the district court's reliance on an election of remedies theory, it is impossible for us to ascertain exactly what weight the trial judge gave to the fact of increased rent. Since neither court applied correct legal principles, we reverse and remand this matter for retrial.

The following is applicable if, on retrial, the factfinder determines that plaintiff's attempts at mitigation were reasonable. Since the purpose of damages in any action is merely to make the injured party whole, defendant is entitled to a reduction in its liability in the amount of the benefits which plaintiff was able to realize as a consequence of the breach (*i.e.,* the higher rent). See, *Tel-Ex Plaza, Inc v Hardees Restaurants, Inc,* 76 Mich App 131; 255 NW2d 794 (1977), *lv den* 402 Mich 832 (1977).

Reversed and remanded for retrial. Costs to abide the ultimate outcome of this action.