Apple v. Comerica 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-015-CV





APPLE CONSULTING, INC.,



 APPELLANT


vs.





COMERICA BANK-DETROIT,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT



NO. 91-15474, HONORABLE JERRY DELLANA, JUDGE PRESIDING



 





 Comerica Bank - Detroit ("the Bank"), appellee, sued Apple Consulting, Inc.
("Apple"), appellant, for unpaid rent and property taxes due under a commercial lease. The trial
court granted summary judgment for the Bank as landlord, awarding it a total of $279,921.59. 
On appeal, Apple argues that the trial court erred in granting summary judgment because the Bank
failed to mitigate its damages. Assuming, however, that the Bank had a duty to mitigate, Apple
failed to present adequate summary-judgment evidence to raise a fact issue as to the affirmative
defense of failure to mitigate. Accordingly, we will affirm the judgment of the trial court.

 In May 1991, the Bank foreclosed on commercial property composed of two parcels
of land located on either side of West 5th Street in Austin. That same month the Bank entered
into an exclusive listing agreement with JB Goodwin Company, a real estate brokerage firm, in
an effort to secure a long-term disposition of the property. Shortly thereafter, on June 13, 1991,
the Bank executed an eight-month lease of the property to Apple. Two months later, however,
Apple abandoned the premises and discontinued rent payments. The Bank sent Apple a
notification of its breach on August 21, 1991, and advised that litigation would ensue unless Apple
performed its obligations under the lease. The Bank did not attempt to terminate the lease. In
October 1991, after failing to resolve the issue with Apple, the Bank filed suit on the lease to
recover unpaid rent and property taxes. Apple responded by pleading, as an affirmative defense,
that the Bank had failed to mitigate its damages.

 The summary-judgment evidence showed that during the course of the events
described above, Robert Stern, a commercial real estate agent with JB Goodwin, actively
marketed the property according to the listing agreement. After making many contacts, Stern
located three potential buyers and three parties interested in leasing. Ultimately, a contract for
sale was signed on November 18, 1991. The purchaser, however, encountered difficulty in
gaining approval from its corporate headquarters and asked the Bank for an extension on the
closing date. The Bank agreed to postpone the scheduled closing from December 31, 1991, to
April 16, 1992. During the pendency of the contract for sale, JB Goodwin's listing expired;
shortly thereafter, on December 29, 1991, Larry Locke, Inc. was retained to represent the Bank
in marketing the property. Despite the pending contract, Locke actively attempted to market the
property, but was unable to find a tenant or purchaser before the expiration of Apple's lease. On appeal from the summary judgment rendered for the Bank, Apple asserts in
three points of error that (1) this Court should impose a general duty to mitigate damages on
landlords in Texas; (2) in the alternative, the Bank is under a duty to mitigate damages because
it sued under a contract theory of anticipatory repudiation; and (3) there is a genuine issue of
material fact regarding the Bank's failure to mitigate its damages.

 Mitigation of damages is defined as the duty an injured party has to exercise
reasonable care to minimize its losses. Walker v. Salt Flat Water Co., 96 S.W.2d 231, 232 (Tex.
1936). Traditionally, Texas law has not imposed on landlords a duty to mitigate their damages. 
See, e.g., Cassidy v. Northwest Tech. Ctr. Assocs., 785 S.W.2d 407, 412 (Tex. App.Dallas
1990, writ denied); Metroplex Glass Ctr. v. Vantage Properties, 646 S.W.2d 263, 265 (Tex.
App.Dallas 1983, writ ref'd n.r.e.). Recently, however, this rule has been called into question. 
See Brown v. RepublicBank First Nat'l Midland, 766 S.W.2d 203, 204-09 (Tex. 1988) (Kilgarlin,
J., concurring; Phillips, C. J., dissenting).

 By asserting that the trial court erred in granting summary judgment for the Bank
in the face of Apple's affirmative defense of failure to mitigate, Apple invites this Court to impose
on the Bank, as landlord, a duty to mitigate. Apple focuses the majority of its argument on the
issue of the existence of a duty to mitigate. However, in order to defeat summary judgment on
the basis of its affirmative defense of failure to mitigate, Apple had the burden to present
admissible evidence raising a fact issue as to each element of that defense. Brownlee v. Brownlee,
665 S.W.2d 111, 112 (Tex. 1984); "Moore" Burger, Inc. v. Phillips Petroleum Co., 492 S.W.2d
934, 936-37 (Tex. 1972). Therefore, even assuming for the sake of argument that Texas
landlords now have a duty to mitigate damages, Apple still had the burden to present sufficient
summary-judgment evidence to raise a fact issue as to whether the Bank acted unreasonably in its
attempts to find another lessee or purchaser. We conclude that Apple failed to present such
evidence.

 Apple points to three actions by the Bank that allegedly constitute a failure to act
reasonably in attempting to find a lessee or purchaser for the property during the remainder of the
term of Apple's lease. First, Apple points to two "short-term" lease proposals that the Bank
rejected shortly after Apple left the property. The record reflects that two potential leases were
discussed; only one written lease proposal, however, is included in the record. The written
proposal was for a three-year lease of the smaller of the two parcels for monthly rent of between
$1,500 and $2,000. The Bank rejected this offer as being too low in light of the fact that Apple
had been paying a total of $27,000 per month in rent for both parcels. Since the relative size of
the smaller parcel is one-third of the whole, a comparable rent for the smaller parcel would be
approximately $9,000 per month. Additionally, a three-year lease is substantially longer than the
remaining six months of Apple's lease. If the proposed lease had been accepted, the Bank would
have decreased its damages for the remaining six months of Apple's lease, but any future sale of
the property would have been encumbered by the new lease until 1994. Mitigation does not
require the injured party to act to its detriment. Bank One, Texas, N.A. v. Taylor, 970 F.2d 16,
29 (5th Cir. 1992), cert. denied, 124 L. Ed. 2d 243 (1993). Since this encumbrance would likely
have had a negative effect on the long-term marketability of the property, the rejection of such a
lease proposal does not raise an inference that the Bank acted unreasonably.

 Apple also suggests that there was a second potential "short-term" lease. The only
information about this second lease is found in Stern's deposition, where he testified that a
proposal had been made to lease the smaller parcel for monthly rent of between $1,200 and
$1,500. As discussed above, however, this suggested rent is substantially lower than the Bank
was willing to accept for the parcel. Moreover, although Apple characterizes this proposal as a
"short-term" lease, there is no summary-judgment evidence showing what term was actually
proposed. We do not think this evidence raises an inference of unreasonable action by the Bank.

 As a second avenue to illustrate that the Bank acted unreasonably, Apple points to
the sale contract entered into by the Bank. Apple first addresses the postponement of the closing
date from December 31, 1991, to April 16, 1992. Apple attributes this delay to the Bank's efforts
to "hedge" on the closing in order to collect damages from Apple for the breach of the lease. This
contention finds no support in the summary-judgment evidence. In fact, Apple's counsel elicited
testimony from Stern during his deposition that the delay was caused by the purchaser, which had
difficulty in gaining approval for the location from its corporate headquarters. Apple also
suggests that, due to the unconsummated contract for sale, no other efforts were made to sell or
lease the property. Again, this conclusion is without support in the summary-judgment record. 
To the contrary, Locke testified in his deposition that, as he understood it, the sale contract did
not inhibit him from marketing the property and that he had continued to attempt to sell or lease
it. This assertion is supported by a list, included in the summary-judgment evidence, of twenty-six contacts with prospective purchasers and lessees made by Locke during the time he marketed
the property. No unreasonable conduct is shown by this evidence.

 Finally, Apple implies that the Bank acted unreasonably by failing to pursue the
possibility of securing a sublease through Apple. The relevant summary judgment evidence
reflects that Apple contacted JB Goodwin about the possibility of subletting the property. Stern
testified that the Bank mentioned to him the possibility of arranging a sublease with Apple. Stern
further testified that he unsuccessfully attempted to contact Apple to discuss the possibility of a
sublease, but that Apple did not return his calls. Apple did not attempt to controvert this
evidence. Additionally, paragraph 10 of the lease states that the "tenant shall not . . . sublet . . .
without first obtaining the written consent of the landlord." We conclude that this evidence fails
to raise an inference that the Bank acted unreasonably. 

 Even assuming, therefore, that the Bank, as landlord, had a duty to mitigate its
damages, we conclude that the summary-judgment record in the present case does not contain
sufficient evidence to raise a fact issue as to the Bank's alleged failure to mitigate. We overrule
Apple's three points of error.

 Finding no error, we affirm the judgment of the trial court.



 

 J. Woodfin Jones, Justice

Before Justices Powers, Jones and Kidd

Affirmed

Filed: November 17, 1993

Do Not Publish