TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-94-00485-CV








Austin Hill Country Realty, Inc. d/b/a Re/Max Austin Hill Country Realty, Inc.,


Barbara A. Hill, Annette V. Smith, and David J. Jones, Appellants




v.




Palisades Plaza, Inc. d/b/a The Palisades, Appellee








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. 93-03927, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING








 Barbara A. Hill, Annette V. Smith, David J. Jones, and Austin Hill Country Realty, Inc.,
conducting business under the name Re/Max Austin Hill Country Realty, Inc. ("Re/Max"), appeal from a
district-court judgment recovered by Palisades Plaza, Inc., ("Palisades") after a jury trial. We will affirm
the trial-court judgment.


THE CONTROVERSY


 Appellants entered into a five-year lease contract with Palisades for office space. The
contract, dated September 15, 1992, required monthly rental payments of $3,128 beginning around
November 15, 1992. An addendum to the contract provided that rental payments would increase on
November 15, 1993, to $3,519. The contract provided that the lease term would begin on the "earlier of
the date the Tenant begins operating its business in the Leased Premises or the `completion date' as stated
in the Leasehold Improvements Agreement." If no improvements were necessary the lease was to begin
on November 15, 1992 or earlier if Re/Max began operating from the leased quarters. Hill, Smith, and
Jones, partners in the Re/Max franchise, guaranteed Re/Max's obligations under the lease.

 By the middle of October 1992, Palisades had almost completed construction and "build
out" in preparation for the appellants' entering into possession on November 15, 1992. Palisades stopped
construction on October 21, 1992, however, because appellants gave Palisades conflicting instructions on
how they wished the office space finished out. In two letters, one dated October 21, 1992 and another
October 27, 1992, Palisades notified appellants that it had ceased working on the office space and would
not resume until Hill, Smith, and Jones designated in writing a single representative authorized to make final
decisions concerning the completion of construction. Appellants did not reply.

 Palisades sued appellants on an action for anticipatory breach of the lease contract. The
jury returned a verdict awarding Palisades $29,716 in damages and $16,500 in attorney's fees. The trial
court rendered judgment on the verdict.


DISCUSSION AND HOLDINGS


 In their first point of error, appellants complain the trial court erred in overruling their
objections to jury question number two. The objections pertained to an asserted landlord's duty to make
reasonable efforts to mitigate damages following anticipatory breach of a lease contract. (1) Appellants
concede that "traditional" landlord-tenant law does not impose a duty upon the landlord to mitigate damages
unless a contract imposes such a duty. See Metroplex Glass Ctr., Inc. v. Vantage Properties, Inc., 646
S.W.2d 263, 265 (Tex. App.--Dallas 1983, writ ref'd n.r.e.). And if a landlord elects to sue for damages
based upon anticipatory breach, he is under no duty to exercise due diligence to find replacement tenants. 
White v. Watkins, 385 S.W.2d 267, 270 (Tex. Civ. App.--Waco 1964, no writ). (2)

 Appellants rest their point of error on Judge Kilgarlin's concurring opinion in Brown v.
Republicbank First National Midland, 766 S.W.2d 203, 204 (Tex. 1988), in which he noted the
absence of a landlord's duty to mitigate damages in "traditional" Texas case law and urged that Texas
should "abandon [this] antiquated rule of property law in favor of more contemporary contract principles." 
Id. at 206. He added: "I would hold the landlord to a duty to make reasonable efforts to mitigate his
damages and would not permit the landlord to recover avoidable damages, i.e., the increased damages
caused by his failure to mitigate." Id. Three judges joined Judge Kilgarlin's concurring opinion and Chief
Justice Phillips stated in dissent that "as a matter of public policy this court should create an implied
condition obligating a landlord to make reasonable efforts to mitigate its damages following a tenant's
default." 

 Judge Kilgarlin also stated, in obiter dicta, that an exception to the traditional rule had been
recognized in those instances where a landlord pursues a remedy in contract, citing Employment Advisors,
Inc. v. Sparks, 364 S.W.2d 478 (Tex. Civ. App.--Waco), writ ref'd n.r.e., 368 S.W.2d 199 (Tex.
1963). The court of civil appeals stated in Sparks that the "damages recoverable are those that would have
been recoverable if the party guilty of the anticipatory breach of contract had waited until the appointed
time for performance before breaching the agreement, and they are subject, of course, to the usual rules
concerning mitigation of damages." 364 S.W.2d at 480 (emphasis added). The supreme court,
expressing no opinion regarding the appellate court's statement in Sparks concerning mitigation of damages
in an anticipatory breach context, refused the application for writ of error, no reversible error, because the
petitioner had not properly objected to the special issue regarding the measure of damages.

 Twenty-five years after the Sparks decision, Judge Kilgarlin, in his Brown concurrence,
stated his belief that although the supreme court expressed no opinion in the Sparks decision on the issue
of mitigation, "Had we done so, we would have explained that the remedy sought by the landlord was
exclusively in contract and incompatible with the traditional view grounded in the law of property; hence,
the contractual principle of mitigation was applicable." Brown, 766 S.W.2d at 205. 

 The fact remains that neither Judge Kilgarlin's nor Judge Phillips' views have ever attracted
a majority of the supreme court. Their opinions do not have stare decisis effect. Rather, stare decisis binds
us to the "traditional" rule that the landlord owes no duty to mitigate, for the supreme court established that
principle by its refusal of writ of error in Early v. Isaacson, 31 S.W.2d 515, 517 (Tex. Civ.
App.--Amarillo 1930, writ ref'd). See Tex. R. Civ. P. 483 (1927, repealed 1986). Consequently, no
appellate court since the Brown decision has imposed a duty to mitigate damages in a property-law
context. The courts have adhered instead to the "traditional" rule. See Cassidy v. Northwest Tech Ctr
Assocs., Ltd., 785 S.W.2d 407, 412 (Tex. App.--Dallas 1990, writ denied) (landlord had no duty to
mitigate in landlords' suit against lease guarantors); Cocke v. Meridian Sav. Ass'n, 778 S.W.2d 516, 520
(Tex. App.--Corpus Christi 1989, no writ) ("We decline to create a duty to mitigate in property law.");
Marynick v. Bockelmann, 773 S.W.2d 665, 673 (Tex. App.--Dallas 1989), rev'd on other grounds,
788 S.W.2d 569 (Tex. 1990) ("Until the supreme court expressly addresses the issue, we are constrained
to follow the traditional rule that a landlord need not mitigate damages."); see also Resolution Trust Corp.
v. Cramer, 6 F.3d 1102, 1108 (5th Cir. 1993) ("Texas intermediate appellate courts still adhere to the
rule that Texas common law does not impose on landlords a duty to mitigate their damages once the leased
premises has been abandoned."). We therefore are not free to create the new common-law duty for which
appellants contend. (3) We overrule appellants' first point of error.

 In their second point of error, appellants complain there is no evidence (4) or in the alternative
insufficient evidence (5) to support the jury's answer to question number two regarding damages. Their third
point of error complains the trial court erred in overruling their objection and their requested jury instruction
regarding question number two because that question did not include an instruction on the proper measure
of damages. Appellants group for argument these two points of error regarding the proper measure of
damages. We will follow suit. The substance of appellants' argument is that the measure of damages pled
and proved by Palisades was not a proper measure of damages. (6) See Speedee Mart, Inc. v. Stovall, 664
S.W.2d 174, 177 (Tex. App.--Amarillo 1983, no writ). Speedee Mart declared as follows:



When a tenant breaches a lease by abandoning the property and terminating rental
payments, the landlord has four options: (1) The landlord may decline to repossess the
property, electing instead to maintain the lease in full force and effect. Under that option,
he can sue on the contract for the rent as it comes due and recover the contractual rent.
. . . (2) The landlord may treat the tenant's conduct as an anticipatory breach of contract,
and repossess and retain the property for his own purposes. Under that option, he can
recover the present value of the rentals that accrue under the lease contract, reduced by
the reasonable cash market value of the lease for the unexpired term. . . . (3) The
landlord may treat the tenant's conduct as an anticipatory breach of contract, repossess the
property and lease it to another tenant. Under that option, he can recover the contractual
rental reduced by the amount to be received from the new tenant. . . . (4) The landlord
may declare the lease forfeited. Under that option, he relieves the tenant of liability for
future rental payments.

 


664 S.W.2d at 177 (citations omitted) (emphasis added). In a footnote, the Speedee Mart court stated: 
"The four options are common law remedies available unless the parties contract otherwise." Id.

 Appellants argue that because Palisades sued for anticipatory breach their recovery was
limited to either option (2) or (3) under Speedee Mart or a hybrid of the two under Maida v. Main
Building, 473 S.W.2d 648, 651 (Tex. Civ. App.--Houston [14th Dist.] 1971, no writ) (when landlord
relets premises for only portion of unexpired term, measure of damages equals contractual rental less
market value of lease); see also White, 385 S.W.2d at 270. The proper measure of damages in the case
of an anticipatory breach of a lease contract depends on the remedy sought by the landlord. The landlord
may elect to pursue a common-law remedy or a contract remedy authorized by the lease. Speedee Mart,
664 S.W.2d at 177. 

 To preserve a point of error for appeal, a party who complains of the trial court's failure
to submit a limiting instruction on damages must object to the charge and tender a written instruction in
substantially correct wording on the proper measure of damages. See Tex. R. Civ. P. 278; Jim Howe
Homes, Inc. v. Rogers, 818 S.W.2d 901, 903 (Tex. Civ. App.--Austin 1991, no writ). Appellants
tendered the following requested instruction: "You are instructed that the Landlord can recover as damages
the present value of the rentals that accrue under the lease, reduced by the reasonable cash market
value of the lease for the unexpired term." (Emphasis added.) We conclude that appellants failed to
tender a substantially correct instruction because Palisades sued for damages that were liquidated at the
time of trial; thus an instruction regarding the present value of damages would have been erroneous. We
therefore overrule appellants' second and third points of error. 

 For the reasons given, we affirm the district-court judgment.



 

 John Powers, Justice

Before Chief Justice Carroll, Justices Powers and Kidd

Affirmed

Filed: September 27, 1995

Do Not Publish Released for publication January 27, 1997. Tex. R. App. P. 90(h).


1.   Jury question number two stated as follows: "What sum of money, if any, if paid now in
cash, would fairly and reasonably compensate Landlord for its damages, if any, that resulted
from the anticipatory breach of lease? Do not add any amount for interest on damages, if
any." Appellants tendered to the Court the following requested instruction regarding question
number two, which was denied: "Consider the following elements of damages, if any, and
none other: You are instructed that the Landlord can recover as damages the present value
of the rentals that accrue under the lease, reduced by the reasonable cash market value of the
lease for the unexpired term. . . . Do not include in your answer any amount that you find the
[Palisades] could have avoided by the exercise of reasonable care."


 The evidence regarding mitigation showed that Tipton Cole and Company, which had
previously occupied office space D-200, moved into the vacant B-200 office space on
September 1, 1993. Thus, B-200 was left vacant for nine and one-half months. During the
time B-200 was vacant, Palisades advertised for tenants continuously in the Austin American-Statesman, a local newspaper. Before November 1992, Palisades had also advertised in a
commercial-property publication entitled the "Flick Report." However, Palisades did not
resume advertising in the Flick Report until the October/November 1993 edition, after B-200
had been leased by Tipton Cole. Furthermore, Smith and Jones offered to take over the lease
without Re/Max and Hill. Palisades rejected this offer because Hill, a co-guarantor under the
Re/Max lease, had not consented to the arrangement. Hill also made an offer to take over
the lease; however, she withdrew the offer before Palisades could reject it. Palisades assert
they discontinued advertising in the Flick Report because of a dispute with the management
of that publication.
2.   But see Evons v. Winkler, 388 S.W.2d 265, 269 (Tex. Civ. App.--Corpus Christi 1965, writ
ref'd n.r.e.) (when tenant abandons premises, landlord may choose to relet premises and recover as
damages amount of agreed rent for entire contractual period of lease less sum realized from reletting,
"after the use of reasonable diligence to obtain a tenant"); Robinson Seed & Plant Co. v. Hexter &
Kramer, 167 S.W. 749, 751 (Tex. Civ. App.--Dallas 1914, writ ref'd) (in case of abandonment by
tenant, landlord has duty "to relet premises for the unexpired term to the best advantage they could in
the exercise of ordinary diligence").
3.   Several law review articles advocate changing the jurisprudence of this state to
incorporate the contract duty of mitigation in landlord-tenant law. See, e.g., Jerry D. Johnson,
Comment, Landlord Remedies in Texas: Confusion Reigns Where Certainty Should Prevail, 33
S. Tex. L. Rev. 417 (1992); Penny L. Parker & John Slavich, Contractual Efforts to Allocate the
Risk of Environmental Liability: Is There a Way to Make Indemnities Worth More Than the
Paper They Are Written On?, 44 Sw. L. J. 1349, 1356 (1991); Edwin Smith, Jr., Comment,
Extending the Contractual Duty to Mitigate Damages to Landlords When a Tenant Abandons
the Lease, 42 Baylor L. Rev. 553 (1990). See generally Lawrence J. Fossi, Bryant W. Burke &
Philip D. Weller, Annual Survey of Texas Law, 45 Sw. L. J. 595, 612-13 (1991).
4.   In deciding a no-evidence point, we must consider only the evidence and inferences
tending to support the finding of the trier-of-fact and disregard all evidence and inferences to
the contrary. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). See generally William Powers,
Jr. & Jack Ratliff, Another Look at "No Evidence" and "Insufficient Evidence," 69 Tex. L. Rev.
515 (1991). A no-evidence point should be sustained when (a) there is a complete absence of
evidence of a vital fact; (b) the reviewing court is barred by rules of law or evidence from giving weight
to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no
more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of a vital fact. 
Robert W. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex. L. Rev.
361, 362-63 (1960).
5.   When reviewing a jury verdict to determine the factual sufficiency of the evidence, we
must consider and weigh all the evidence and should set aside the judgment only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Cain
v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); In re Estate of King, 244 S.W.2d 660, 661 (Tex.
1951); see also Pool v. Ford Motor Co., 715 S.W.2d 629 (Tex. 1986).
6.   The evidence introduced at trial showed that Palisades lost: (1) $29,716 in gross rental
payments for the nine and one-half months in which B-200 remained vacant, (2) $11,208 in lost
rental payments due to the vacancy created by Tipton Cole's move to B-200, (3) $8,610 in
refurbishing expenses due to necessary alterations in preparation for Tipton Cole's needs,
and (4) $1,088.65 in advertising expenses. Palisades alleged a total of $50,622.65 in damages. 
In their answers to requests for admissions, both Smith and Jones admitted that "$29,716 is
the sum to which Plaintiff is entitled for lost rental revenues incurred herein over a nine-and-a-half month period at $3,128 per month."


 which had
previously occupied office space D-200, moved into the vacant B-200 office space on
September 1, 1993. Thus, B-200 was left vacant for nine and one-half months. During the
time B-200 was vacant, Palisades advertised for tenants continuously in the Austin American-Statesman, a local newspaper. Before November 1992, Palisades had also advertised in a
commercial-property publication entitled the "Flick Report." However, Palisades did not
resume advertising in the Flick Report until the October/November 1993 edition, after B-200
had been leased by Tipton Cole. Furthermore, Smith and Jones offered to take over the lease
without Re/Max and Hill. Palisades rejected this offer because Hill, a co-guarantor under the
Re/Max lease, had not consented to the arrangement. Hill also made an offer to take over
the lease; however, she withdrew the offer before Palisades could reject it. Palisades assert
they discontinued advertising in the Flick Report because of a dispute with the management
of that publication.
2.   But see Evons v. Winkler, 388 S.W.2d 265, 269 (Tex. Civ. App.--Corpus Christi 1965, writ
ref'd n.r.e.) (when tenant abandons premises, landlord may choose to relet premises and recover as
damages amount of agreed rent for entire contractual period of lease less sum realized from reletting,
"after the use of reasonable diligence to obtain a tenant"); Robinson Seed & Plant Co. v. Hexter &
Kramer, 167 S.W. 749, 751 (Tex. Civ. App.--Dallas 1914, writ ref'd) (in case of abandonment by
tenant, landlord has duty "to relet premises for the unexpired term to the best advantage they could in
the exercise of ordinary diligence").
3.   Several law review articles advocate changing the jurisprudence of this state to
incorporate the contract duty of mitigation in landlord-tenant law. See, e.g., Jerry D. Johnson,
Comment, Landlord Remedies in Texas: Confusion Reigns Where Certainty Should Prevail, 33
S. Tex. L. Rev. 417 (1992); Penny L. Parker & John Slavich, Contractual Efforts to Allocate the
Risk of Environmental Liability: Is There a Way to Make Indemnities Worth More Than the
Paper They Are Written On?, 44 Sw. L. J. 1349, 1356 (1991); Edwin Smith, Jr., Comment,
Extending the Contractual Duty to Mitigate Damages to Landlords When a Tenant Abandons
the Lease, 42 Baylor L. Rev. 553 (1990). See generally Lawrence J. Fossi, Bryant W. Burke &
Philip D. Weller, Annual Survey of Texas Law, 45 Sw. L. J. 595, 612-13 (1991).
4.   In deciding a no-evidence point, we must consider only the evidence and inferences
tending to support the finding of the trier-of-fact and disregard all evidence and inferences to
the contrary. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). See generally William Powers,
Jr. & Jack Ratliff, Another Look at "No Evidence" and "Insufficient Evidence," 69 Tex. L. Rev.
515 (1991). A no-evidence point should be sustained when (a) there is a complete absence of
evidence of a vital fact; (b) the reviewing court is barred by rules of law or evidence from giving weight
to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no
more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of a vital fact. 
Robert W. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex. L. Rev.
361, 362-63 (1960).
5.   When reviewing a jury verdict to determine the factual sufficiency of the evidence, we
must consider and weigh all the evidence and should set aside the judgment only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Cain
v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); In re Estate of King, 244 S.W.2d 660, 661 (Tex.
1951); see also Pool v. Ford Motor Co., 715 S.W.2d 629 (Tex. 1986).
6.   The evidence introduced at trial showed that Palisades lost: (1) $29,716 in gross rental
payments for the nine and one-half months in which B-200 remained vacant, (2) $11,208 in lost
rental payments due to the vacancy created by Tipton Cole's move to B-200, (3) $8,610 in
refurbishing expenses due to necessary alterations in preparation for Tipton Cole's needs,
and (4) $1,088.65 in advertising expenses. Palisades alleged a total of $50,622.65 in damages. 
In their answers to requests for admissions, both Smith and Jones admitted that "$29,716 is