**S. J. MAIDA, Sr., d/b/a Houston Shoe Hospital, Appellant,**

v.

**The MAIN BUILDING OF HOUSTON, Appellee.**

No. 528.

Court of Civil Appeals of Texas, Houston (14th Dist.).

Nov. 17, 1971.

Thomas J. Lykos, Houston, for appellant.

John B. Scofield, Foreman, Dyess, Prewett & Henderson, Houston, for appellee.

TUNKS, Chief Justice.

This is a suit by a landlord, The Main Building of Houston, against its tenant, S. J. Maida, Sr., d/b/a Houston Shoe Hospital. The suit is on the lease agreement.

By the lease in question the landlord leased to the tenant space in a building called The Main Building of Houston. The lease was for a 10 year term beginning July 1, 1963, and ending June 30, 1973. The rent was fixed at $550.00 per month. The tenant vacated the premises in the latter part of February of 1968, being in arrears in the rent due for the months of December, 1967, and January and February of 1968. The landlord took possession when the tenant vacated.

The lease included the following paragraph:

"If the demised premises be abandoned or vacated by Lessee, or if this lease is terminated under the provisions of Article Eighth hereof, Lessor shall have the right, but not the obligation, to relet the same for the remainder of the period covered hereby; and if the rent received through such reletting is not at least equal to the rent provided for hereunder, Lessee shall pay and satisfy any deficiencies between the amount of the rent called for and that received through reletting, and all expenses incurred by any such reletting, including, but not limited to, the cost of renovating, altering and decorating for a new occupant. Nothing herein shall be construed as in any way denying Lessor the right, in case of abandonment, vacation of premises, or other breach of this contract by Lessee, to treat the same as an entire breach and at Lessor's option immediately sue for *the entire breach of this contract and* any and all damages occasioned Lessor thereby."

The tenant did not have the right of subleasing except with consent of the landlord.

In 1968 the landlord leased the premises *to another tenant for a three year term* beginning February 1, 1969, and ending January 31, 1972. The rent provided by this second lease was $800.00 per month. By the terms of the second lease the tenant was given an option to extend for a term of two years. The premises remained vacant from the time the defendant vacated them until they were occupied by the second tenant on February 1, 1969. The second tenant had, up to the time of the trial, remained in occupancy and had paid the $800 monthly rental.

This case was tried on March 2, 1971. The recovery sought by the landlord in its trial pleading was for $7,700.00 which represents the $550 monthly rental for the 14 months beginning with December, 1967, and ending with January, 1969, during which the premises were vacant; for $3,493.81 alleged to be the expenses necessarily incurred in renovating the premises incident to reletting them to the second tenant; for items of $166.53 and $39.35, representing utilities furnished defendant during the last three months of his occupancy; and for attorney's fees as provided for in the lease contract. The landlord did not seek any recovery, on the theory of anticipatory breach, for any rents to accrue under the lease after the date of the trial.

In its trial pleading the plaintiff, landlord, plead:

"At such time, Plaintiff re-entered said premises for the purpose of reletting same for Defendant's account, recognizing the continuation of the Lease Agreement and reserving its right to hold Defendant liable for any deficiencies in rental."

Both parties have recognized that the landlord's taking possession of the premises after the tenant vacated them was in the exercise of the landlord's contractual right provided in the first sentence of the above quoted paragraph 7 of the lease.

The quoted and summarized pleadings of the plaintiff landlord clearly show that this *is a suit on the lease contract and not a* suit for the breach of it. The unusual fact situation that gives rise to the questions that have arisen is in the fact that the premises, after the tenant vacated, were relet at a rental which, if it continues to ac-

crue and to be paid until June 30, 1973, will produce more income to the landlord than the landlord would have received under the original lease.

The case was tried without a jury. The trial judge rendered the following judgment:

"It is therefore ORDERED, ADJUDGED and DECREED that Plaintiff do have and recover of and from the Defendant, S. J. MAIDA, SR., d/b/a/ HOUSTON SHOE HOSPITAL, the sum of THREE THOUSAND NINE HUNDRED FIFTY–TWO AND 81/100 (3,952.81) DOLLARS, attorney's fees in the amount of ONE THOUSAND AND NO/100 ($1,000.00) DOLLARS, and THREE HUNDRED THIRTY–FOUR AND 53/100 ($334.53) DOLLARS as interest at the rate of six (6%) percent per annum on ONE THOUSAND EIGHT HUNDRED FIFTY–EIGHT AND 59/100 ($1,858.59) DOLLARS from March 1, 1968, with interest on the total Judgment of FIVE THOUSAND TWO HUNDRED EIGHTY–SEVEN AND 34/100 ($5,287.34) DOLLARS at the rate of six (6%) percent per annum from the date of judgment, and its costs in this behalf expended, and if it be not seasonably paid, execution may issue thereon."

The findings of fact and conclusion of law filed by the trial judge include findings that the defendant tenant was indebted to the landlord plaintiff for $1858.59, the amount of rent and utility payments that had accrued and were unpaid at the date the tenant vacated the premises, and for $2,094.22 the amount found by the trial judge to represent the renovating expense necessarily incurred as an incident to reletting the premises. These two items make up the $3,952.81 award in the judgment rendered.

There is no complaint as to the trial judge's findings of fact. Rather it is the contention of the appellant tenant that the trial court applied an erroneous measure of recovery.

■ Under the language of the usual lease contract there are a number of alternatives available to a landlord when the tenant, without justification, abandons the leased premises and stops paying the rent due. The landlord may decline to retake possession of the premises and sue for the rent provided by the lease as such rent becomes due. Western Flavor-Seal Company v. Kallison, 389 S.W.2d 521 (Tex.Civ.App.-San Antonio 1965, no writ). In such case his suit is on the contract and the measure of his recovery is the contractual rental.

■ He may elect to treat the conduct of the tenant as an anticipatory breach of contract, retake possession, and, without reletting the premises, sue for damages for such anticipatory breach. In such case his measure of damages is the present value of the rentals to accrue under the lease contract less the reasonable cash market value of the lease for the unexpired term. Walter E. Heller & Company v. Allen, 412 S.W.2d 712 (Tex.Civ.App.-Corpus Christi 1967, writ ref'd n. r. e.).

■ He may retake possession, relet the premises and sue for anticipatory breach. In such case his measure of damages usually is the contractual rental provided in the lease less the amount realized from the reletting. White v. Watkins, 385 S.W.2d 267 (Tex.Civ.App.-Waco 1964, no writ). That case also held that where the landlord retakes possession and relets the premises for only a portion of the unexpired term the measure of damages for that period of the lease term as to which there has been no reletting is contractual rental less the market value of the lease for such period.

■ He may declare the lease forfeited which will relieve the lessee of obligation to pay future rent. Rohrt v. Kelley Manufacturing Company, 162 Tex. 534, 349 S.W.2d 95 (1961).

The appellant tenant contended in the trial court, and contends here, that his liability for rents under the lease contract should be credited with not only the rent that has accrued and been paid under the second lease, but also with an assumed payment of rent at the rate of $800 per month for the remainder of the term of the second lease (eleven months) and an assumed value of $800 per month for that portion of the unexpired term of his lease not covered by the second lease. If such contention were sustained the tenant would owe nothing because the credit thus allowed him would exceed his liability under the lease contract. The appellant's principal authority for such contention is White v. Watkins, supra.

The White case is not authority for the appellant's contentions. There the landlord's suit was treated as a suit for breach of contract. He sought recovery for not only the rent that had accrued up to the date of the trial, but also for that to accrue in the future. The Court of Civil Appeals, in its opinion, clearly recognized that a different measure of recovery is applicable to a suit for breach of contract than would be applicable to a suit on the contract.

The facts in this case seem to be more nearly analogous to those in a case where the landlord, without retaking possession and reletting, elects to sue on the contract for rent as it accrues, as in Western Flavor-Seal Company v. Kallison, supra. Here, too, the landlord sued only for rent accrued together with necessary costs incurred as an incident to reletting. The difference between this case and that in Kallison is that this landlord, having retaken possession and having relet, as authorized by the lease contract, was obliged to credit the defaulting tenant with rents that had been collected under the second lease up to the time of the trial. It is apparent that the trial judge determined the amount of recovery by computing the rent that had accrued under the defendant's lease and crediting it with the rent that had been paid under the second lease. The time

from the date that the defendant abandoned the premises and the plaintiff retook possession to the date of trial was 36 months. At $550 a month $19,800 of rent accrued during that period. At the date of the trial, the second lease had been in force for 25 months. $20,000 of rent had been paid under that lease. (The accrued and unpaid rent during the last three months of the defendant's occupancy were the subject of a separate item in the trial court's findings and need not be considered in this computation.)

A number of questions exist under the facts of this case that need not be answered. The trial court credited the rent paid under the second lease against that which accrued under the first lease before the term of the second lease began as well as that which accrued under the first lease and during the term of the second. Should the court have credited rent paid under the second lease only to that under the first lease which accrued after the second lease began? The appellee here has not complained of such credit, by cross-point or otherwise, so that we need not answer that question. There was an excess of $200 in the rent paid under the second lease over that which had accrued under the first lease after the defendant's abandonment and up to the time of the trial. Should that excess have been credited against the cost of renovating incurred as an incident to reletting? Appellant's brief does not so present that question as to require that it be answered.

Appellant vigorously urges that he should have had credited against any liability that he had at the date of the trial the excess over his contractual rental of the rent to be paid in the future under the second lease as well as the excess in the value of the possession of the premises after the primary term of the second lease ends (which value he says is shown to be $800 per month) over his contractual rent. For a number of reasons that contention is overruled. While the landlord had a right to retake and relet the premises, it owed

the tenant no duty to do so. It could have, if it wished, permitted the premises to remain vacant and thus brought about a situation wherein the tenant would have had nothing to credit against his contractual liability for rent. Silbert v. Keton, 29 S. W.2d 824 (Tex.Civ.App.-Waco 1930, writ ref'd). It would seem inconsistent to hold that the landlord, having no duty to create a credit in the first place should be required to speculate and assume the responsibility for the fact that such credit created would continue to exist in the future. Also, it is to be remembered that the landlord did not sue for the tenant's anticipatory breach of the contract to pay rent in the future. If he had done so, as noted above, his measure of recovery would have been the excess, if any, of the present value of the rent to accrue in the future over the value of the possession of the property for the rest of the term. The trial court in this case did not make any finding as to the value of the lease (or the possession of the property) for that portion of its term which lay in the future, and was not requested to do so. The fact that the second tenant leased the property for $800 a month for part of the unexpired term of the first lease did not necessarily establish that such unexpired term had a value of $800 a month. The second tenant may not continue to pay $800 a month for the entire term of the second lease. The conduct of the defendant in this case demonstrates that possibility. The second tenant's primary term does not cover the entire unexpired term of the first lease. There is a possibility that at the end of the second lease the property will remain vacant for a time, as it remained vacant for eleven months after this tenant vacated. The evidence shows that the second tenant, at her own expense, did considerable alteration of the premises to adapt it to a special use, a beauty parlor. If the second tenant vacates the premises the landlord may well be put to the expense of remodeling, or be restricted to leasing the premises to another beauty parlor. The trial court could well have found that the value of the unexpired term of the first lease did not exceed the amount of the rent to be paid under it. If such a finding were necessary to the judgment rendered it would be presumed that the trial judge so found. Rule 299, Tex. R.Civ.P.

The judgment of the trial court is affirmed.