**AUSTIN HILL COUNTRY REALTY, INC. d/b/a Re/Max Austin Hill Country Realty, Inc., Barbara A. Hill, Annette V. Smith, and David J. Jones, Appellants,**

v.

**PALISADES PLAZA, INC. d/b/a The Palisades, Appellee.**

No. 03-94-00485-CV.

Court of Appeals of Texas, Austin.

Sept. 27, 1995.

Geoffrey D. Weisbart, William R. Hemphill, Jr., Hance, Scarborough, Woodward & Weisbart, L.L.P., Austin, for Austin Hill Country Realty and Barbara A. Hill.

Barry Bishop, Clark, Thomas & Winters, Austin, for Annette V. Smith and David J. Jones.

Kenneth D. Lerner, Blazier, Rutland & Lerner, Austin, for appellee.

Before CARROLL, C.J., and POWERS and KIDD, JJ.

POWERS, Justice.

Barbara A. Hill, Annette V. Smith, David J. Jones, and Austin Hill Country Realty, Inc., conducting business under the name Re/Max Austin Hill Country Realty, Inc. ("Re/Max"), appeal from a district-court judgment recovered by Palisades Plaza, Inc., ("Palisades") after a jury trial. We will affirm the trial-court judgment.

## THE CONTROVERSY

Appellants entered into a five-year lease contract with Palisades for office space. The contract, dated September 15, 1992, required monthly rental payments of $3,128 beginning around November 15, 1992. An addendum to the contract provided that rental payments would increase on November 15, 1993, to $3,519. The contract provided that the lease term would begin on the "earlier of the date the Tenant begins operating its business in the Leased Premises or the 'completion date' as stated in the Leasehold Improvements Agreement." If no improvements were necessary the lease was to begin on November 15, 1992 or earlier if Re/Max began operating from the leased quarters. Hill, Smith, and Jones, partners in the Re/Max franchise, guaranteed Re/Max's obligations under the lease.

By the middle of October 1992, Palisades had almost completed construction and "build out" in preparation for the appellants' entering into possession on November 15, 1992. Palisades stopped construction on October 21, 1992, however, because appellants gave Palisades conflicting instructions on how they wished the office space finished out. In two letters, one dated October 21, 1992 and another October 27, 1992, Palisades notified appellants that it had ceased working on the office space and would not resume until Hill, Smith, and Jones designated in writing a single representative authorized to make final decisions concerning the completion of construction. Appellants did not reply.

Palisades sued appellants on an action for anticipatory breach of the lease contract. The jury returned a verdict awarding Palisades $29,716 in damages and $16,500 in attorney's fees. The trial court rendered judgment on the verdict.

## DISCUSSION AND HOLDINGS

■ In their first point of error, appellants complain the trial court erred in overruling their objections to jury question number two. The objections pertained to an asserted landlord's duty to make reasonable efforts to mitigate damages following anticipatory breach of a lease contract.[1] Appellants con-

---

1. Jury question number two stated as follows: "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Landlord for its damages, if any, that resulted from the anticipatory breach of lease? Do not add any amount for interest on damages, if any." Appellants tendered to the Court the following requested instruction regarding question number two, which was denied: "Consider the following elements of damages, if any, and none other: You are instructed that the Landlord can recover as damages the present value of the rentals that accrue under the lease, reduced by the reasonable cash market value of the lease for the unexpired term.... Do not include in your answer any amount that you find the [Palisades] could have avoided by the exercise of reasonable care."

The evidence regarding mitigation showed that Tipton Cole and Company, which had previously occupied office space D–200, moved into the vacant B–200 office space on September 1, 1993. Thus, B–200 was left vacant for nine and one-half months. During the time B–200 was vacant, Palisades advertised for tenants continuously in the Austin American–Statesman, a local newspa-

cede that "traditional" landlord-tenant law does not impose a duty upon the landlord to mitigate damages unless a contract imposes such a duty. *See Metroplex Glass Ctr., Inc. v. Vantage Properties, Inc.,* 646 S.W.2d 263, 265 (Tex.App.—Dallas 1983, writ ref'd n.r.e.). And if a landlord elects to sue for damages based upon anticipatory breach, he is under no duty to exercise due diligence to find replacement tenants. *White v. Watkins,* 385 S.W.2d 267, 270 (Tex.Civ.App.—Waco 1964, no writ).[2]

Appellants rest their point of error on Judge Kilgarlin's concurring opinion in *Brown v. RepublicBank First National Midland,* 766 S.W.2d 203, 204 (Tex.1988), in which he noted the absence of a landlord's duty to mitigate damages in "traditional" Texas case law and urged that Texas should "abandon [this] antiquated rule of property law in favor of more contemporary contract principles." *Id.* at 206. He added: "I would hold the landlord to a duty to make reasonable efforts to mitigate his damages and would not permit the landlord to recover avoidable damages, i.e., the increased damages caused by his failure to mitigate." *Id.* Three judges joined Judge Kilgarlin's concurring opinion and Chief Justice Phillips stated in dissent that "as a matter of public policy this court should create an implied condition obligating a landlord to make reasonable efforts to mitigate its damages following a tenant's default."

Judge Kilgarlin also stated, in obiter dicta, that an exception to the traditional rule had been recognized in those instances where a landlord pursues a remedy in contract, citing *Employment Advisors, Inc. v. Sparks,* 364 S.W.2d 478 (Tex.Civ.App.—Waco), *writ ref'd n.r.e.,* 368 S.W.2d 199 (Tex.1963). The court of civil appeals stated in *Sparks* that the "damages recoverable are those that would have been recoverable if the party guilty of the anticipatory breach of contract had waited until the appointed time for performance before breaching the agreement, and they are *subject, of course, to the usual rules concerning mitigation of damages."* 364 S.W.2d at 480 (emphasis added). The supreme court, expressing no opinion regarding the appellate court's statement in *Sparks* concerning mitigation of damages in an anticipatory breach context, refused the application for writ of error, no reversible error, because the petitioner had not properly objected to the special issue regarding the measure of damages.

Twenty-five years after the *Sparks* decision, Judge Kilgarlin, in his *Brown* concurrence, stated his belief that although the supreme court expressed no opinion in the *Sparks* decision on the issue of mitigation, "Had we done so, we would have explained that the remedy sought by the landlord was exclusively in contract and incompatible with the traditional view grounded in the law of property; hence, the contractual principle of mitigation was applicable." *Brown,* 766 S.W.2d at 205.

The fact remains that neither Judge Kilgarlin's nor Judge Phillips' views have ever attracted a majority of the supreme court. Their opinions do not have stare decisis effect. Rather, stare decisis binds us to the "traditional" rule that the landlord owes no duty to mitigate, for the supreme court established that principle by its refusal of writ

---

per. Before November 1992, Palisades had also advertised in a commercial-property publication entitled the "Flick Report." However, Palisades did not resume advertising in the Flick Report until the October/November 1993 edition, after B–200 had been leased by Tipton Cole. Furthermore, Smith and Jones offered to take over the lease without Re/Max and Hill. Palisades rejected this offer because Hill, a co-guarantor under the Re/Max lease, had not consented to the arrangement. Hill also made an offer to take over the lease; however, she withdrew the offer before Palisades could reject it. Palisades assert they discontinued advertising in the Flick Report because of a dispute with the management of that publication.

2. *But see Evons v. Winkler,* 388 S.W.2d 265, 269 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n.r.e.) (when tenant abandons premises, landlord may choose to relet premises and recover as damages amount of agreed rent for entire contractual period of lease less sum realized from reletting, "after the use of reasonable diligence to obtain a tenant"); *Robinson Seed & Plant Co. v. Hexter & Kramer,* 167 S.W. 749, 751 (Tex.Civ. App.—Dallas 1914, writ ref'd) (in case of abandonment by tenant, landlord has duty "to relet premises for the unexpired term to the best advantage they could in the exercise of ordinary diligence").

of error in *Early v. Isaacson,* 31 S.W.2d 515, 517 (Tex.Civ.App.—Amarillo 1930, writ ref'd). *See* Tex.R. Civ. P. 483 (1927, repealed 1986). Consequently, no appellate court since the *Brown* decision has imposed a duty to mitigate damages in a property-law context. The courts have adhered instead to the "traditional" rule. *See Cassidy v. Northwest Tech Ctr. Assocs., Ltd.,* 785 S.W.2d 407, 412 (Tex.App.—Dallas 1990, writ denied) (landlord had no duty to mitigate in landlords' suit against lease guarantors); *Cocke v. Meridian Sav. Ass'n,* 778 S.W.2d 516, 520 (Tex.App.—Corpus Christi 1989, no writ) ("We decline to create a duty to mitigate in property law."); *Marynick v. Bockelmann,* 773 S.W.2d 665, 673 (Tex.App.—Dallas 1989), *rev'd on other grounds,* 788 S.W.2d 569 (Tex.1990) ("Until the supreme court expressly addresses the issue, we are constrained to follow the traditional rule that a landlord need not mitigate damages."); *see also Resolution Trust Corp. v. Cramer,* 6 F.3d 1102, 1108 (5th Cir.1993) ("Texas intermediate appellate courts still adhere to the rule that Texas common law does not impose on landlords a duty to mitigate their damages once the leased premises

has been abandoned."). We therefore are not free to create the new common-law duty for which appellants contend.[3] We overrule appellants' first point of error.

■ In their second point of error, appellants complain there is no evidence[4] or in the alternative insufficient evidence[5] to support the jury's answer to question number two regarding damages. Their third point of error complains the trial court erred in overruling their objection and their requested jury instruction regarding question number two because that question did not include an instruction on the proper measure of damages. Appellants group for argument these two points of error regarding the proper measure of damages. We will follow suit. The substance of appellants' argument is that the measure of damages pled and proved by Palisades was not a proper measure of damages.[6] *See Speedee Mart, Inc. v. Stovall,* 664 S.W.2d 174, 177 (Tex.App.—Amarillo 1983, no writ). *Speedee Mart* declared as follows:

> When a tenant breaches a lease by abandoning the property and terminating rent-

3. Several law review articles advocate changing the jurisprudence of this state to incorporate the contract duty of mitigation in landlord-tenant law. *See, e.g.,* Jerry D. Johnson, Comment, *Landlord Remedies in Texas: Confusion Reigns Where Certainty Should Prevail,* 33 S. Tex. L.Rev. 417 (1992); Penny L. Parker & John Slavich, *Contractual Efforts to Allocate the Risk of Environmental Liability: Is There a Way to Make Indemnities Worth More Than the Paper They Are Written On?,* 44 Sw. L.J. 1349, 1356 (1991); Edwin Smith, Jr., Comment, *Extending the Contractual Duty to Mitigate Damages to Landlords When a Tenant Abandons the Lease,* 42 Baylor L.Rev. 553 (1990). *See generally* Lawrence J. Fossi, Bryant W. Burke & Philip D. Weller, *Annual Survey of Texas Law,* 45 Sw. L.J. 595, 612–13 (1991).

4. In deciding a no-evidence point, we must consider only the evidence and inferences tending to support the finding of the trier-of-fact and disregard all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). *See generally* William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 Tex. L.Rev. 515 (1991). A no-evidence point should be sustained when (a) there is a complete absence of evidence of a vital fact; (b) the reviewing court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more

than a mere scintilla; or (d) the evidence establishes conclusively the opposite of a vital fact. Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Tex. L.Rev. 361, 362–63 (1960).

5. When reviewing a jury verdict to determine the factual sufficiency of the evidence, we must consider and weigh all the evidence and should set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *In re Estate of King,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *see also Pool v. Ford Motor Co.,* 715 S.W.2d 629 (Tex.1986).

6. The evidence introduced at trial showed that Palisades lost: (1) $29,716 in gross rental payments for the nine and one-half months in which B–200 remained vacant, (2) $11,208 in lost rental payments due to the vacancy created by Tipton Cole's move to B–200, (3) $8,610 in refurbishing expenses due to necessary alterations in preparation for Tipton Cole's needs, and (4) $1,088.65 in advertising expenses. Palisades alleged a total of $50,622.65 in damages. In their answers to requests for admissions, both Smith and Jones admitted that "$29,716 is the sum to which Plaintiff is entitled for lost rental revenues incurred herein over a nine-and-a-half month period at $3,128 per month."

al payments, the landlord has four options: (1) The landlord may decline to repossess the property, electing instead to maintain the lease in full force and effect. Under that option, he can sue on the contract for the rent as it comes due and recover the contractual rent.... (2) The landlord may treat the tenant's conduct as an anticipatory breach of contract, and repossess and retain the property for his own purposes. Under that option, he can recover the *present value of the rentals* that accrue under the lease contract, reduced by the *reasonable cash market value of the lease* for the unexpired term.... (3) The landlord may treat the tenant's conduct as an anticipatory breach of contract, repossess the property and lease it to another tenant. Under that option, he can recover the contractual rental reduced by the amount to be received from the new tenant.... (4) The landlord may declare the lease forfeited. Under that option, he relieves the tenant of liability for future rental payments.

664 S.W.2d at 177 (citations omitted) (emphasis added). In a footnote, the *Speedee Mart* court stated: "The four options are common law remedies available unless the parties contract otherwise." *Id.*

 Appellants argue that because Palisades sued for anticipatory breach their recovery was limited to either option (2) or (3) under *Speedee Mart* or a hybrid of the two under *Maida v. Main Building*, 473 S.W.2d 648, 651 (Tex.Civ.App.—Houston [14th Dist.] 1971, no writ) (when landlord relets premises for only portion of unexpired term, measure of damages equals contractual rental less market value of lease); *see also White*, 385 S.W.2d at 270. The proper measure of damages in the case of an anticipatory breach of a lease contract depends on the remedy sought by the landlord. The landlord may elect to pursue a common-law remedy or a contract remedy authorized by the lease. *Speedee Mart*, 664 S.W.2d at 177.

To preserve a point of error for appeal, a party who complains of the trial court's failure to submit a limiting instruction on damages must object to the charge *and* tender a written instruction in substantially correct wording on the proper measure of damages. *See* Tex.R. Civ. P. 278; *Jim Howe Homes, Inc. v. Rogers*, 818 S.W.2d 901, 903 (Tex. App.—Austin 1991, no writ). Appellants tendered the following requested instruction: "You are instructed that the Landlord can recover as damages the *present value of the rentals* that accrue under the lease, reduced by the *reasonable cash market value of the lease* for the unexpired term." (Emphasis added.) We conclude that appellants failed to tender a substantially correct instruction because Palisades sued for damages that were *liquidated* at the time of trial; thus an instruction regarding the present value of damages would have been erroneous. We therefore overrule appellants' second and third points of error.

For the reasons given, we affirm the district-court judgment.