Reversed and Remanded and Opinion filed December 23, 2010.

 

 

 

                                                                                                In
The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00066-CV

___________________

 

GKG.Net, Inc. d/b/a Global Knowledge Group,
Appellant

 

V.

 

Mitchell Rudder Properties, L.P., Successor in
Interest to Karbrooke, Inc., Appellee



 



 

On
Appeal from the 85th District Court

Brazos County,
Texas



Trial Court Cause No. 06-003373-CV-85

 



 

 

OPINION

          In this landlord-tenant
case, appellee Mitchell Rudder Properties, L.P., successor-in-interest to
Karbrooke, Inc. (“Mitchell Rudder”) sued appellant GKG.Net, Inc. d/b/a Global
Knowledge Group (“GKG.Net”) for breach of a commercial leasing agreement.  The jury
found in favor of Mitchell Rudder and awarded damages and attorney’s fees.  On
appeal, GKG.Net contends that the evidence is legally and factually
insufficient to support the damages award.  We reverse and remand for a new
trial.

I.                 
Factual
and Procedural Background

On March 2, 2000, GKG.Net, an internet services
company, leased commercial office space in Crystal Park Plaza in College
Station, Texas, from Karbrooke, Inc. for a three-year term.  GKG.Net subsequently
executed a renewal lease agreement for an additional ten-year term set to end
on March 31, 2013.

In 2004, Mitchell Rudder acquired Crystal Park Plaza
through a bankruptcy proceeding.  In connection with the acquisition, the
tenant leases were assigned to Mitchell Rudder.  Mitchell Rudder hired Clark
& Wyndam, a property management company, to manage Crystal Park Plaza. 
Clint Schroff was Crystal Park Plaza’s property manager.

On May 31, 2006, GKG terminated its lease.  On June
19, 2006, Mitchell Rudder notified GKG.Net that it was in default, terminated
GKG.Net’s right to possession, and took possession of the premises.  At the
time it vacated the premises, GKG.Net was paying $13.56 per net rentable square
foot per year.

On June 20, 2006, Mitchell Rudder entered into a
five-year lease with World Savings Bank FSB for the space previously occupied
by GKG.Net.  Pursuant to an amended lease, World Savings Bank took possession
of the premises and began paying rent on September 16, 2006.  The lease
agreement provided, among other things, that World Savings Bank could buy out
the last two years of its five-year lease or, alternatively, exercise a
five-year renewal option.  After it signed the lease, World
Savings Bank was acquired by Wachovia.

On November 15, 2006, Mitchell Rudder sent a demand
letter to GKG.Net seeking payment for past-due rental payments, tenant
improvements, and lease commissions to re-let the space.  After GKG.Net refused
to pay, Mitchell Rudder sued GKG.Net for breach of the lease agreement and
sought $113,048.21 in damages for past due rental payments, lease commissions,
and tenant improvements.

The trial began on February 4, 2008.  On the second
day of trial, Mitchell Rudder sought a trial amendment to increase its claim
for damages based on Wachovia’s intention to exercise the two-year buy-out
option pursuant to the terms of the re-lease agreement.  The trial court denied
the request for a trial amendment, declared a mistrial, and re-set the trial
date.  Mitchell Rudder subsequently amended its pleadings and alleged actual
damages in the amount of $465,831.51 for (1) past due rental payments, (2) the
difference between GKG’s contractual rent and the amount received from
re-letting, (3) future rental payments remaining under the unexpired original
lease term, and (4) costs incurred in modifying the vacated premises for the
new tenant.

At the conclusion of the second trial, the jury found
that GKG.Net had failed to comply with the lease agreement and that its breach
was unexcused, and it awarded Mitchell Rudder the following damages: (1)
$27,254.71 for the period of time prior to the premises being re-let by World
Savings Bank; (2) $314,123.02 for the period of time after expiration of the
World Savings Bank lease during which the premises was not re-let; (3) $86,540.77
for costs incurred in re-letting the premises; and (4) $7,358.77 in late
charges.  The jury also awarded an offset to GKG.Net in the amount of
$158,034.57 for the period of time in which the premises was re-let by World
Savings Bank.  GKG.Net filed motions for new trial, for judgment
notwithstanding the verdict, and to disregard jury findings which the trial
court subsequently denied.  This appeal followed.

II.              
Standard of Review

In a legal sufficiency review, we determine whether
the evidence at trial would enable a reasonable and fair-minded person to reach
the finding under review.  City of Keller v. Wilson, 168 S.W.3d 802, 827
(Tex. 2005).  In conducting this review, we credit favorable evidence if
reasonable factfinders could and disregard contrary evidence unless reasonable
factfinders could not.  Id.  We must consider the evidence in the light
most favorable to the finding under review and indulge every reasonable
inference that would support it.  Id. at 822.  If there is no evidence
to support the finding, we must then examine the entire record to determine if
the contrary proposition is established as a matter of law.  Id.  The
trier of fact is the sole judge of the witnesses’ credibility and the weight to
be given their testimony.  Id. at 819; 2900 Smith, Ltd. v.
Constellation New Energy, Inc., 301 S.W.3d 741, 745 (Tex. App.—Houston
[14th Dist.] 2009, no pet.).

We must, and may only, sustain a legal sufficiency
challenge when (1) the record discloses a complete absence of evidence of a
vital fact, (2) the court is barred by rules of law or of evidence from giving
weight to the only evidence offered to prove a vital fact, (3) the evidence
offered to prove a vital fact is no more than a mere scintilla, or (4) the
evidence establishes conclusively the opposite of a vital fact.  See Uniroyal
Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998).  When the
evidence offered to prove a vital fact is so weak as to do no more than create
a mere surmise or suspicion of its existence, the evidence is less than a
scintilla and, in legal effect, is no evidence.  See Ford Motor Co.
v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004).

In a factual sufficiency review, we must examine the
entire record, considering both the evidence in favor of, and contrary to, the
challenged findings.  See Maritime Overseas Corp. v. Ellis, 971 S.W.2d
402, 406-07 (Tex. 1998); 2900 Smith, Ltd., 301 S.W.3d at 746.  We may
set aside the verdict for factual sufficiency only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.  See
Ellis, 971 S.W.2d at 407.  Because we are not a fact finder, we may not
pass upon the witnesses’ credibility or substitute our judgment for that of the
jury, even if the evidence would support a different result.  See Ellis,
971 S.W.2d at 407.

III.           
Analysis

In one issue, GKG.Net contends that the evidence is
legally and factually insufficient to support the award of damages.  Specifically,
it argues that the jury’s award of $314,123.02 for the remainder of GKG.Net’s unexpired
lease term is contrary to the law and the evidence.

Traditionally, Texas courts have regarded the
landlord whose tenant has abandoned the lease before the end of its term as
having four options.  See Austin Hill Country Realty, Inc. v. Palisades
Plaza, Inc., 948 S.W.2d 293, 300 (Tex. 1997).  First, the landlord can
maintain the lease and sue for rent as it becomes due.  Id.  Second, the
landlord can treat the breach as an anticipatory repudiation, repossess, and
sue for the present value of future rentals reduced by the reasonable cash
market value of the property for the remainder of the lease term.  Id.  Third,
the landlord can treat the breach as anticipatory, repossess, release the
property, and sue the tenant for the difference between the contractual rent
and the amount received from the new tenant.  Id.  Fourth, the landlord
can declare the lease forfeited (if the lease so provides), and relieve the
tenant of liability of future rent.  Id.[1]
 If the landlord re-lets the premises for only a portion of the unexpired term,
as here, then the measure of damages has two components: (1) the measure of
damages for the period of re-letting is the contractual rent provided in the
original lease less the amount realized from the re-letting, and (2) the
measure of damages for that portion or period of the lease term as to which
there has been no re-letting is the difference between the present value of the
rent contracted for in the lease and the reasonable cash market value of the
lease for its unexpired term.  25 Richard
A. Lord, Williston on Contracts §
66:87 (4th ed. 2007).

On appeal, GKG.Net challenges only the jury’s award
of $314,123.02.  The jury awarded this sum for the period of time during which
the premises was not re-let.[2] 
The gravamen of GKG.Net’s complaint is that the jury failed to grant an offset
for the reasonable cash market value of the lease or the value of the
possession of the property.  GKG.Net argues that Mitchell Rudder’s
argument—which the jury ultimately accepted—that the reasonable cash market
value of the lease for the unexpired term of GKG.Net’s lease was zero is
contrary to the law and the evidence.

At trial, Mitchell Rudder relied primarily on
Schroff, Crystal Park Plaza’s property manager, to present damages evidence.  Schroff
testified to, among other things, the amount that GKG.Net owed Mitchell Rudder
due to its termination of the lease in May 2006.  Specifically, when Schroff
was asked about the value of the remainder of GKG.Net’s lease term after World Savings
Bank vacated the premises, he testified as follows:

Well, the — we’re asked to see
what the reasonable cash market value or rental value was of the unexpired
term, and for their unexpired term we felt like it was zero because there’s
nobody that I know as an investor that would buy that tenth year — or year 11
and the last 3 months of 12 as an income stream for anything when they’d
already vacated the building.  So we didn’t assign any value to that.

In closing arguments,
plaintiff’s counsel made the following statements related to part three of Jury
Question 5, which addressed damages for the period of time during which the
premises was not re-let:

The next phase, No. 3 of Question
5, involves the time period after World Savings is out of the space.  That
vacancy is 1,295 days. . . .  So it’s simple math.  You take the daily rate
times 1,295 days, and you discount it by a [sic] 6 percent, which gives you a
number to go in here which is $314,123.02.

. .
. . 

The last number is the amount
after World Savings is gone.  And that’s where we have a difference also.  I’ll
show you the big difference.  The difference is the law and what the judge has
instructed you through this question says that you subtract the reasonable cash
market value of the lease for its unexpired term.  Of the lease.  Okay.

           How much is that piece of paper worth that GKG
signed and said we’re going to pay you for that unexpired term?  Can I go out
on the market and say, here, buy this because it has some value?  No.  There’s
no value.  Who wants a tenant or a piece of paper that says they’re going to pay
rent when they have already abandoned the premises and they already said that
they’re not going to pay rent.  That piece of paper is worth nothing.

. .
. . 

Their piece of paper, that lease, isn’t worth anything. 
And that’s what Clint [Schroff] testified to.  What [defense counsel] wants you
to do is to ignore what this says.  He wants to change the word “lease” to the
word “premises.”  What is the value of the premises for the unexpired term? 
That’s not what the law says.  That’s not what this instruction says.  It
doesn’t say “premises.”  I agree.  Is there some value potentially for that
premises?  There may be if we could find another tenant.  Unfortunately, I lost
my crystal ball.  But it doesn’t really matter because that’s not what this
says.  It says “lease” and there is no value.

In its answer to part three of Jury Question 5, the
jury awarded Mitchell Rudder $314,123.02 for the period of time during which
the premises was not re-let.  In so doing, it equated the reasonable cash
market value of GKG.Net’s lease for its unexpired term with the value of the
right to receive rental payments from GKG.Net for the remainder of its lease
term, i.e., zero.  Thus, we must determine whether the jury’s award is
supported by the law and the evidence.  Put differently, the fundamental
question before us is whether the reasonable cash market value of a lease for
its unexpired term means the value of the lease itself or of the property.

Our
review of the case law provides guidance in answering this question.  In Austin
Hill Country Realty, Inc. v. Pacific Palisades, Inc., 948 S.W.2d 293
(Tex. 1997), a landlord sued the tenant for anticipatory breach of a commercial
lease.  See id. at 295.  At
trial, the tenant sought to prove that the landlord had failed to mitigate its
damages resulting from the tenant’s alleged breach, and it requested an
instruction asking the jury to reduce the landlord’s damages based on the
landlord’s failure to mitigate.  See id.  The trial judge rejected the request, and the jury
returned a verdict for the landlord.  See id.  The appeals court affirmed the judgment.  See
Austin Hill Country Realty, Inc. v. Pacific Palisades, Inc., 938 S.W.2d 469, 473 (Tex. App.—Austin 1995), rev’d, 948 S.W.2d 293 (Tex. 1997).  

In
reversing, the Texas Supreme Court held that a landlord has a duty to make
reasonable efforts to mitigate damages when the tenant breaches the lease and
abandons the property, unless the commercial landlord and tenant contract
otherwise.[3]  See Austin Hill Country Realty, Inc., 948 S.W.2d at 299.  In its analysis, the Court outlined
the four causes of action available to a landlord against a tenant who has
breached the lease.  See id. at
300.  The Court noted that, under the second remedy, “the landlord can treat
the breach as an anticipatory repudiation, repossess, and sue for the present
value of future rentals reduced by the reasonable cash market value of the property for the remainder of the lease term.”  Id.
(emphasis added).

In Lakeside Leasing Corp. v. Kirkwood
Atrium Office Park Phase 3, 750 S.W.2d 847 (Tex. App.—Houston [14th Dist.]
1988, no writ), the tenants appealed from a default judgment in favor of the
landlord on its claim for breach of a commercial leasing contract.  See id.
at 849.  The appeals court affirmed the trial court’s judgment on the issue of
liability but reversed the portion of the judgment awarding damages and
remanded the case for a new trial on the damages issue.  See id. at 853. 
In discussing the two remedies available to the landlord who treats his
tenant’s default as an anticipatory breach, the court stated that “[i]f the
landlord elects to simply retain the premises for his own benefit, his measure
of damages is the difference between the present value of the future rentals
under the contract diminished by the reasonable current market value of the premises.” 
Id. (emphasis added).  The court found, among other things, that the
record lacked evidence of the market value of the premises, and that the trial
court had erred by failing to hear evidence before compensating the landlord
for future rentals.  See id. at 852–53.

In Maida v. Main Building of Houston, 473
S.W.2d 648 (Tex. App.—Houston [14th Dist.] 1971, no writ), the tenant appealed
the trial court’s judgment in favor of the landlord on its breach of contract
claim.  See id. at 649.  After securing a replacement tenant for the
premises, the landlord sued the original tenant to recover past rent payments
for the period of time between the tenant’s last rent payment and the date the
replacement tenant’s lease began; the landlord did not seek recovery for any
rent accruing under the original lease after the date of trial.  See id.  In
noting that the landlord did not sue for future rentals, the court stated that
“[i]f he had done so … his measure of recovery would have been the excess, if
any, of the present value of the rent to accrue in the future over the value of
the possession of the property for the remainder of the term.  The
trial court in this case did not make any finding as to the value of the lease
(or the possession of the property) for that portion of its term which lay in
the future, and was not requested to do so.”  Id. (emphasis added).  Additionally,
the court noted that “[t]he fact that the second tenant leased the property for
$800 a month for part of the unexpired term of the first lease did not
necessarily establish that such unexpired term had a value of $800 a month.”[4]  Id.

These cases lead us to conclude that the reasonable
cash market value of a lease for its unexpired term means the reasonable cash
market value of the property — not the reasonable cash market value of the
lease that has been breached.  To find otherwise would mean that the reasonable
cash market value of a lease where the tenant has breached always would be zero. 
Further, Mitchell Rudder has not cited any authority, nor are we aware of any,
in which the right to receive payments from the original tenant was used as the
basis for determining the reasonable cash market value of the lease for its
unexpired term.[5]

We hold that there is no evidence to support the
jury’s finding that the reasonable cash market value of the property for the
remainder of GKG.Net’s lease term is zero.[6] 
Issue one is sustained.  We reverse the trial court’s judgment and remand this
case for a new trial.[7]

IV.            
Conclusion

The judgment of the trial court is reversed and remanded
for a new trial on the issues of liability and damages.

 

                                                                                    

                                                                        /s/        Adele
Hedges 

Chief Justice

 

 

 

Panel consists of Chief Justice
Hedges and Justices Frost and Boyce.









[1] Application of the first
remedy has been modified by section 91.006 of the Texas Property Code which
requires a landlord to mitigate his damages after the breach of a lease.  See
Tex. Prop. Code Ann. § 91.006 (West 2007).





[2]
Part three of Jury Question 5 reads as follows:

What sum of money, if any,
if paid now in cash, would fairly and reasonably compensate [Mitchell Rudder]
for its damages, if any, that resulted from such a failure to comply?

. . . .

3. For the period of time in
which the premises has not been re-let: the present value of the amounts GKG
agreed to pay [Mitchell Rudder], less the reasonable cash market value of the
lease for its unexpired term.

Answer:           $
314,123.02

 





[3] Mitchell Rudder’s efforts
to mitigate its damages following GKG.Net’s breach of its lease are not at
issue in this case. 





[4] See also Randall’s
Food & Drugs, L.P. v. Patton, No. 01-06-00821-CV, 2008 WL 3876149 (Tex.
App.—Houston [1st Dist.] 2008, no pet.) (mem. op.).  In Patton, a
landlord-tenant case arising from the sublease of a shopping center unit, the
appeals court noted the four causes of action available to a landlord whose
tenant has breached the lease, one of which is to “treat the breach as an
anticipatory repudiation, repossess, and sue for the present value of future
rentals reduced by the reasonable cash market value of the property for
the remainder of the lease term . . . .” (emphasis added) Id. at *4. 
The court stated that because the landlord sought recovery for anticipatory
breach, it had to prove the present value of the future rentals under the
unexpired term of the lease, reduced by either the reasonable value of
re-renting the leased premises or the rent paid by any new tenant.  Id.  at
*6.  The court found that the landlord had failed to satisfy its burden to
demonstrate either the rent that a new tenant was paying or the reasonable
value of the re-leasing of the premises, in keeping with its duty to mitigate. 
See id.





[5]
Mitchell
Rudder argues that GKG.Net waived its right to complain about the submission of
part three of Jury Question 5 because it failed to object and did not proffer a
jury question asking the jury to determine the value of the property rather
than the lease.  Thus, Mitchell Rudder contends, GKG.Net waived its right to
complain that the jury answered the wrong question.  Mitchell Rudder’s argument
is without merit.  GKG.Net does not contend that the jury question was
improper; in fact, this exact language is found in the case law.  See, e.g.,
Maida, 473 S.W.2d at 651; White v. Watkins, 385 S.W.2d 267, 270
(Tex. App.—Amarillo 1964, no writ).  Rather, it argues that the value of the
right to receive income from GKG.Net for the remainder of its unexpired term
cannot form the basis of the jury’s determination that the reasonable cash
market value of the lease was zero, and that there is no other evidence in the
record to suggest that the reasonable cash market value of the lease for its
unexpired term was zero.

 





[6]
However, there is some evidence in the record
which might provide a basis from which Mitchell Rudder could prove the
reasonable cash market value of the premises.  At trial, Schroff testified that
Mitchell Rudder was advertising the premises on several internet websites at
$19.20 per net rentable square foot per year.  In addition, the record reveals
that under its amended five-year lease, World Savings Bank agreed to pay $17.86
per net rentable square foot per year for the first three years and $19.87 per
net rentable square foot per year for the last two years of its lease.





[7] Rule 44.1(b) of the Texas
Rules of Appellate Procedure provides, in relevant part, “The court may not
order a separate trial solely on unliquidated damages if liability is
contested.”  Tex. R. App. P. 44.1(b).  “If a party files a general denial in
the trial court, that pleading puts a plaintiff to his or her proof on all
issues, including liability; its effect extends to contesting liability in the
event of remand on appeal.”  Estrada v. Dillon, 44 S.W.3d 558, 562 (Tex.
2001).  “A party’s failure to present on appeal an additional discrete
challenge to liability when that party challenges damages does not defeat the
plain language of rule 44.1(b) proscribing a separate trial on unliquidated
damages when liability is contested.”  Id.  Here, GKG.Net contested
liability by filing a general denial.  Because Rule 44.1(b) proscribes a
separate trial on unliquidated damages when liability is contested, we remand
the issue of liability as well as damages.